# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| DOLETHA CORNWELL, ) | |
| ) | CASE NO.　　1:11-cv-01360 |
| Plaintiff, ) | |
| ) | |
| v. ) | MAGISTRATE JUDGE GREG WHITE |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| 　Commissioner of Social Security ) | **MEMORANDUM OPINION & ORDER** |
| ) | |
| Defendant. ) | |

Plaintiff Doletha Cornwell ("Cornwell") challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying Cornwell's claim for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Title II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. This matter is before the Court pursuant to 42 U.S.C. § 405(g) and the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the final decision of the Commissioner is AFFIRMED.

## I.  Procedural History

On July 14, 2008, Cornwell filed an application for POD, DIB, and SSI alleging a disability onset date of November 14, 2007.  Her application was denied both initially and upon reconsideration.  Cornwell timely requested an administrative hearing.

On June 17, 2010, an Administrative Law Judge ("ALJ") held a hearing during which Cornwell, represented by counsel, testified.  Nancy J. Borgeson testified as an impartial vocational expert ("VE").  On October 15, 2010, the ALJ found Cornwell was able to perform a significant number of jobs in the national economy and, therefore, was not disabled.  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied further review.

## II.  Evidence

### *Personal and Vocational Evidence*

Age forty (40) at the time of her administrative hearing, Cornwell is a "younger" person under social security regulations.  *See* 20 C.F.R. §§  404.1563(c) & 416.963(c).  Cornwell has a high school education and past relevant work as a home health aide and nursing assistant.  (Tr. 18.)

### *Hearing Testimony*

At the administrative hearing, Cornwell testified as follows:

- She suffered an injury on July 5, 2007, resulting in a Worker's Compensation claim.  (Tr. 28.)

- She previously filed a disability claim in 2004 because of bulging discs in her lower back and cartilage problems in her right foot.  (Tr. 32-33.)

- Her previous job was as a certified nurse's assistant ("CNA").  She cannot return to that work because she cannot lift patients any longer.  (Tr. 33.)

2

- She cannot stand for long due to arthritis in her right knee.  (Tr. 34.)

- She has pain in her lower back making it hard for her to bend.  (Tr. 34.)

- She cannot walk long distances due to problems with her foot and knee.  (Tr. 35.)

- She suffers from migraine headaches and has been prescribed Topamax.  (Tr. 35.)

- The more she uses her left, dominant hand, the more tremors she experiences.  It is "numb and tingly all the time."  She cannot grip or pinch with her left hand.  The fingers on her right hand also occasionally become numb.  (Tr. 35.)

- When sitting, she has to shift her position constantly because her lower back hurts.  (Tr. 36.)

- Her most comfortable position is lying down, which she does most of the day.  (Tr. 36.)

- She can drive, but her husband does most of the driving.  It is difficult for her to look over her shoulder due to neck pain.  (Tr. 36.)

- Her husband prepares meals at home, though she tries to help.  Her husband or her son does the laundry.  (Tr. 36.)

- She takes Percocet for pain, and has received injections in her lower back, neck, and shoulder.  (Tr. 36-37.)

- She believes an MRI had been performed on her lower back, though she could not recall when.  (Tr. 38.)

- When asked what restrictions she experiences from her diagnosis for mild left carpal tunnel syndrome, she testified that she has always has pain. (Tr. 39.)  In her left upper extremity, she has "sharp, burning pains all the time" and that she has constant pain and tremors.  (Tr. 39-40.)

- She takes Cymbalta for depression.  (Tr. 44.)

The ALJ posed the following hypothetical to the VE:

[A]ssume a hypothetical claimant that is a younger individual, is a high school graduate, whose past work is that of a CNA.  Assume this person retains the residual functional capacity – and that's going to be at the light level ....  [O]ccasionally lifting and/or carry, including pulling, 20 pounds; frequently lift

3

> and/or carry, including upward pulling, 10 pounds; stand and/or walk with normal breaks for a total of about six hours in an eight-hour workday; sit with normal breaks for a total of about six hours in an eight-hour workday.  Postural limitations: never climb ladders, ropes, or scaffolds; only occasionally crawl.  Here's some other limitations with respect to the left upper extremity: only occasional reaching, handling, fingering, feeling.  No rapid, repetitive flexion of the left wrist.  No overhead reaching with the left upper extremity.  Push and/or pull within the limits consistent with the limitations provided.

(Tr. 45.)

The VE testified that Cornwell's past work as a CNA would be precluded.  (Tr. 45.)  Initially, the VE also testified that, based on the limitation of only occasional reaching, handling, fingering, and feeling with the dominant hand, most light, unskilled work would be precluded as well.  (Tr. 47.)  The VE acknowledged that certain jobs may exist, but none in great numbers.  *Id*.  As an example, the VE identified the job of a floor attendant.  (Tr. 47-48.)  After further questioning from the ALJ, the VE testified that the positions of lobby attendant and ticket-taker would have similar job characteristics as that of floor attendant because all three positions were placed in the same employment grouping.  (Tr. 52-53.)  The VE further testified that the hypothetical individual could perform the jobs of usher, lobby attendant, and ticket-taker, and that 39,300 such jobs exist in northeast Ohio.  (Tr. 53-54.)

When asked by Cornwell's counsel whether the hypothetical individual could perform the job of ticket-taker, the VE responded that it might be more difficult due to restrictions on the use of her dominant hand, but that accepting tickets with the non-dominant hand would be possible.  (Tr. 54.)  The VE stated that many of the positions identified, based on her experience, are part-time.  (Tr. 55.)  However, when asked by the ALJ whether her source for the above cited numbers included only full-time jobs, the VE testified it is her understanding that only full-time jobs are quoted.  (Tr. 56.)  Later during the hearing, the VE confirmed that the jobs data she cited

4

referred to full-time and salaried positions only. (Tr. 57-58.) Finally, the ALJ asked whether the above cited jobs were affected by a restriction on strict production quotas. (Tr. 57.) The VE testified that such restriction had no effect on those jobs. *Id*.

### III. Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[1]

A claimant is entitled to a POD only if: (1) she had a disability; (2) she was insured when she became disabled; and (3) she filed while she was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Cornwell was insured on her alleged disability onset date, November 14, 2007, and remained insured through the date of the ALJ's decision. (Tr. 12.) Therefore, in order to be entitled to POD and DIB, Cornwell must establish a continuous twelve month period of

---

[1] The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

disability commencing between these dates. Any discontinuity in the twelve month period precludes an entitlement to benefits. *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

A claimant may also be entitled to receive SSI benefits when she establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

### IV. Summary of Commissioner's Decision

The ALJ found Cornwell established medically determinable, severe impairments, due to degenerative disc disease of the cervical spine, left shoulder strain, sprain with neuropathy of the left median nerve, obesity, early onset dysthmic disorder, and post-traumatic stress disorder. (Tr. 12.) However, her impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. Cornwell was found incapable of performing her past relevant work, but was determined to have a Residual Functional Capacity ("RFC") for a limited range of light work. The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Cornwell is not disabled.

### V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision.");

*Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).  Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.  *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.  *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).")  This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.  *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether the proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations or failure to provide the reviewing court with a sufficient basis to determine that the Commissioner applied the correct legal standards are grounds for reversal where such failure prejudices a claimant on the merits or deprives a claimant of a substantial right. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006).

7

## VI. Analysis

### *RFC for Light Work*

Cornwell asserts that the RFC determination allowing a limited range of light work is not supported by substantial evidence. Cornwell identifies three alleged shortcomings: (1) lack of evidence supporting her ability to stand, walk, and sit for six hours in a workday; (2) lack of specificity as to Cornwell's ability to push/pull with her upper extremities; and, (3) failure to include her mental impairments in the RFC. (ECF No. 16 at 12-16.)

RFC is an indication of an individual's work-related abilities despite their limitations. *See* 20 C.F.R. § 416.945(a). A claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner. *See* 20 C.F.R. § 416.945(e). As such, the ALJ bears the responsibility for assessing a claimant's RFC, based on *all* of the relevant evidence. *See* 20 C.F.R. § 416.945(a) (emphasis added). "Judicial review of the Commissioner's final administrative decision does not encompass re-weighing the evidence." *Carter v. Comm'r of Soc. Sec.*, 2012 U.S. Dist. LEXIS 40828 at \*\*21-22 (W.D. Mich. Mar. 26, 2012) (*citing Mullins v. Sec'y of Health & Human Servs.*, 680 F.2d 472 (6th Cir. 1982); *Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. Appx. 411, 414 (6th Cir. 2011); *Vance v. Comm'r of Soc. Sec.*, 260 Fed. Appx. 801, 807 (6th Cir. 2008)). Moreover, a plaintiff's mere disagreement with the weight an ALJ ascribes to certain opinions does not provide basis for overturning the Commissioner's RFC determination. *Carter*, 2012 U.S. Dist. LEXIS 40828 at \*\*21-22.

Cornwell asserts that there is no evidence supporting the ALJ's finding that she can sit,

stand, and walk for six hours in an eight-hour workday.[2] (ECF No. 16 at 13-14.) Although Cornwell testified that she must spend most of the day lying down to alleviate her pain, she fails to cite a single medical opinion of record that suggests she has any limitations standing, walking, and sitting. Cornwell merely makes general reference to her neck and back problems. While there is evidence of these conditions, Cornwell has not identified any medical source statements concerning the functional limitations they cause. A diagnosis alone does not define the functional limitations caused by an impairment. *See Young v. Sec'y of Health and Human Servs.*, 925 F.2d 146,151 (6th Cir. 1990) (diagnosis of impairment does not indicate severity of impairment); *Bradley v. Sec'y of Health and Human Servs*., 862 F.2d 1224,1227 (6th Cir. 1988) (signs of arthritis not enough; must show that condition is disabling).

     To the contrary, the ALJ's opinion cites several medical source opinions and observations regarding Cornwell's ability to walk, stand, and sit. The ALJ cites the opinion of Darshan Mahajan, M.D., who examined Cornwell and opined that she had normal muscle tone, normal gait, and, with the exception of the thenar muscle in her hand, well maintained power and coordination in her muscle groups. (Tr. 16, *citing* Exh. 20F.) In addition, as recognized by Cornwell, the ALJ specifically relied upon the RFC assessment of Phillip Bentley, M.D. (ECF No. 16 at 13-14, Tr 16.) Dr. Bentley opined that Cornwell could perform light work, including

---

[2] "The regulations define light work as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing -- the primary difference between sedentary and most light jobs.... Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time." Social Security Ruling ("SSR") 83-10.

the ability to sit and stand/walk for six hours each in an eight-hour workday. (Tr. 578.) Dr. Bentley also expressly found that Cornwell was not credible with respect to her self reported walking/standing restrictions. (Tr. 582.) Cornwell takes issues with Dr. Bentley's conclusions and argues that the ALJ should not have relied upon his opinion. However, it is not this Court's function to re-weigh the evidence or craft its own RFC. The ALJ clearly considered the available evidence – both the medical evidence and Cornwell's testimony – when determining her RFC. Furthermore, the claimant bears the burden of demonstrating that she is disabled. Cornwell has failed to direct this Court to any medical opinion that she cannot sit, stand, or walk as described in the RFC.

Cornwell also argues that the RFC was not supported by substantial evidence because the ALJ failed to determine the extent to which she was limited in pushing/pulling (*i.e.* never, occasionally, frequently). (ECF No. 16 at 14.) The ALJ stated that "push and/or pull, including operation of hand and/or foot controls is limited in the upper extremities."[3] (Tr. 14.) Cornwell asserts that she should have been precluded from pushing/pulling altogether, which would, in turn, eliminate a large amount of work in the light exertional category. (ECF No. 16 at 14.) First, reading the ALJ's opinion that Cornwell was *limited* in her ability to push/pull cannot reasonably be construed as a categorical prohibition against such activity. During the hearing, the RFC – as posed to the VE – indicated that pushing and/or pulling was limited "consistent with the limitations provided." (Tr. 45.) The limitations provided specifically included *occasionally pulling* twenty pounds and *frequently pulling* ten pounds. *Id.* It was upon these

---

[3] While the Commissioner acknowledges that the ALJ could have better explained his limitations concerning Cornwell's ability to push/pull, he argues that the ALJ properly accounted for her upper extremity limitations. (ECF No. 18 at 12-13.)

limitations that the VE relied. Moreover, the jobs identified by the VE during her testimony do not appear to require pushing/pulling as part of the job description given at the hearing. (Tr. 50-51, 59-60.)

Finally, Cornwell argues that the RFC did not adequately account for limitations based on her mental impairments. (ECF No. 16 at 15.) Cornwell asserts that because consultative examiner Ronald G. Smith, Ph. D., opined that she had moderate limitations in her ability to withstand the pressure of day-to-day work activity (Tr. 525), the RFC was not supported by substantial evidence. (ECF No. 16 at 15.) Cornwell argues that the RFC's inclusion of a restriction against strict production quotas did not adequately accommodate her moderate impairment. *Id*. Dr. Smith's opinion also found that Cornwell was "not impaired in her ability to relate to others including fellow workers, supervisors and the general public in a job situation." (Tr. 525.) Moreover, Cornwell cites no law suggesting that moderate limitations in her ability to withstand the pressure of day-to-day work activity would require greater limitations than those found by the ALJ.

***VE Testimony***

In her second assignment of error, Cornwell argues that the ALJ improperly crossed the line from judge to expert, and substituted his own opinion for that of the VE. (ECF No. 16 at 16-19.) The Commissioner counters that there was nothing improper about the ALJ questioning the VE about her testimony. (ECF No. 18 at 14-15.)

The Court has reviewed the oral transcript of the hearing in its entirety, paying special attention to the testimony of the VE. Although the questioning of the VE was somewhat out of the ordinary, it was not improper. When the VE initially indicated that she did not believe there

11

were any jobs in significant numbers (Tr. 47), the ALJ asked the VE whether Cornwell could perform the job of an usher, and what number of such jobs existed locally. (Tr. 52-58.) After some confusion about whether usher positions are paid/unpaid or full-time/part-time[4], the VE consulted both the DICTIONARY OF OCCUPATIONAL TITLES and THE SELECTED CHARACTERISTICS OF OCCUPATIONS, and concluded that the hypothetical individual could perform the jobs of usher, lobby attendant, and ticket-taker, and that 39,300 such jobs exist in northeast Ohio. (Tr. 53-54.) Contrary to Cornwell's argument, the VE arrived at these conclusions based on her expert knowledge and consultation of the aforementioned sources, and the ALJ did not substitute his opinion for that of the VE. Essentially, the ALJ inquired whether the VE may have overlooked the job of usher, and, the VE, after considering the issue, testified that such position was indeed within the hypothetical individual's abilities and existed in significant numbers.

Finally, while there was some dispute whether the hypothetical person could perform the job of ticket-taker, the VE estimated that the usher positions alone accounted for one-third (1/3) of the 39,300 jobs identified in Northeast Ohio. (Tr. 60-61.) The ALJ's ultimate finding at Step Five relied only on the 13,000 usher positions. (Tr. 19.)

---

[4] During the hearing, the VE confirmed that the job numbers she cited only referred to full-time and salaried positions. (Tr. 57-58.)

## VII. Decision

For the foregoing reasons, the Court finds the decision of the Commissioner supported by substantial evidence. Accordingly, the decision of the Commissioner is AFFIRMED.

IT IS SO ORDERED.

/s/ Greg White<br>U.S. Magistrate Judge

Date: April 30, 2012